UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

v.

D-4 Timothy Ivory Carpenter,

        Defendant.

Case No. 12-CR-20218

Hon. Jonathan J.C. Grey

---

## United States' Sentencing Memorandum

---

Timothy Carpenter and his criminal cohorts committed a series of violent armed robberies of RadioShack and T-Mobile stores. Carpenter led his band of accomplices who used firearms and violence to terrorize their victims. For his crimes, a jury convicted Carpenter of six counts of Hobbs Act robbery and five related gun counts. Reflecting the seriousness of his conduct, Carpenter initially received a 1,395-month sentence, 1,260 of which was mandatorily consecutive by statute. Following a successful appeal, Carpenter now appears for resentencing. Due to the timing of his appeal, Carpenter will benefit from the First Step Act, and the mandatory portion of his sentence is reduced to 300 months.

To account for his leadership role in these violent offenses, the government recommends Carpenter receive a sentence of 435 months' imprisonment.

## I.    Facts and procedural history

Timothy Carpenter, along with a rotating cast of accomplices, robbed at gunpoint at least seven RadioShack and T-Mobile cellphone stores over a two-year period. Carpenter acted as the leader in many of the robberies by selecting the target store, assembling a handful of perpetrators, and arranging for the guns and transportation. Finding immediate success, the gang's modus operandi settled into a familiar pattern. The leader—usually Carpenter—along with one or two others stayed in one car parked across from the targeted store and served as lookouts. Two or three other guys formed the entry team and were parked in front of the target store in the getaway car. The leader, acting as lookout, would call the entry team once the coast was clear. At that point the violence was unleashed. The entry team members would enter the store with guns drawn, yelling at the terrified employees and customers to move to the back of the store. Under the fear of death, the employees

2

were directed to open doors and locked cages, while the entry team members filled their bags—purchased by Carpenter—with brand new cellphones in their original boxes. After emptying the cash registers and satisfied they had secured their ill-gotten gains, the robbers exited the store and escaped in the getaway car.

The lookout and entry teams met up nearby, returned or disposed of the guns and stolen car, and fenced the stolen phones for cash, after which the leader paid the others according to their roles. The trial testimony established that Carpenter was the leader for most of these hits, always acting as lookout, and never entered the stores. (R. 330: Tr., 2826-2836 (first robbery), 2836-46 (second robbery), 2846-56 (third robbery), 2857-68 and 2874-85 (fourth robbery); (R. 328: Tr., 2406-2525 (fourth robbery), 2526-35, 2549-50 (fifth robbery), 2535-2547 (sixth robbery), 2550-62 (seventh robbery)).

The entry team used violence during the robberies, brandishing firearms and pushing and grabbing employees and customers as they herded them into the back of the store. (R. 327: Tr., 2326, "I was being led by the first guy with a gun pressed against me" – trial testimony of

3

employee E.S.); (R. 326: Tr., 2276, "They grabbed my customer around the neck like this" and "dragged her the rest of the way to the back room" – trial testimony of employee A.B.)). Understandably, the victims were scared. (R. 327: Tr., 2330, "I was scared for my life" because "I saw who they were" – trial testimony of E.S.). Of course, submission through fear was Carpenter's goal, and it worked. (R. 327: Tr., 2346, "he makes me get on the ground and told me if I moved, he would kill me" – trial testimony of R.M.); (R. 325: Tr., "I was scared because. . . a robbery can go any kind of way" – trial testimony of employee Q.J.). These robberies proved to be highly lucrative—the gang cleared more than $50,000 from their scheme.

The government prosecuted Carpenter for aiding and abetting the armed robberies. For each relevant robbery, the government charged Capenter with two corresponding counts: first, violating the Hobbs Act, 18 U.S.C. § 1951(a), by aiding and abetting a robbery affecting interstate commerce; and second, violating 18 U.S.C. § 924(c) by aiding and abetting the use or carrying of a firearm during a federal crime of violence. Carpenter was prosecuted for six of the seven robberies.

**A. Carpenter is convicted at trial and sentenced**

4

Following trial, the jury convicted Carpenter of six robbery counts (1, 3, 7, 9, 11, 13) and five related firearm counts (4, 8, 10, 12, 14), acquitting him only on the first gun count (2). (R. 249: Carpenter Verdict Form, 1338-1343). The district court sentenced Carpenter to a prison term of 1,395 months—135 months for the robberies plus the 5-year consecutive sentence on the first gun charge. The subsequent four gun charges resulted in mandatorily consecutive 25-year sentences each. (R. 301: Carpenter Judgment, 1602).

**B. Carpenter appeals his sentence**

Carpenter challenged his sentence on appeal, arguing that in light of the ruling in *Dean v. United States*, 137 S.Ct. 1170, 197 L.Ed.2d 490 (2017), the district court erred when it sentenced him for his robbery convictions without considering the 1,260-month mandatory minimum sentence when fashioning an appropriate sentence for the robbery counts. Carpenter's sentences were vacated, and his case was remanded for resentencing. *United States v. Carpenter*, 788 Fed. Appx. 364, (6th Cir.), 2019 WL 6954341.

**C. Carpenter is resentenced**

5

Carpenter appeared for his resentencing on February 11, 2022, and requested that the district court apply the First Step Act, 132 Stat. 5194, which if applied, would have limited Carpenter's exposure on the applicable subsequent 924(c) convictions to a maximum of 5-years imprisonment on each count.[1] The district court—which had also presided over the trial—declined Carpenter's invitation to apply the First Step Act. After considering the 3553(a) factors as well as the 1,260-month mandatory sentence, the district court decided that Carpenter's crimes demanded the same 135-month sentence on the robbery counts to run consecutive to his related firearm offenses.

When pronouncing sentence Judge Cox noted that even after the passage of time, he still recalled the case, "I do remember the trial and I do remember testimony and I do remember the nature of the crimes. . . I do remember the terror that these victims experienced." (ECF No. 616, PageID.5771). And Judge Cox also stated, "why am I giving you this sentence? I've articulated the nature of the offense, through terror and

---

[1] Relevant to Carpenter, the First Step Act reduced the mandatory 25-year consecutive sentence for a subsequent 924(c) conviction to a maximum 5-year consecutive sentence unless a defendant has a finalized prior 924(c) conviction. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

seeking to remember the testimony of this case – almost ten years ago – of the victims and what they experienced, I'm giving you the bottom of the guidelines. I just don't think – I don't feel it varies when I think about the victims." (*Id.* at PageID.5778). Carpenter was ultimately resentenced to the same 1,395 months' imprisonment in the BOP.  (Judgment, ECF No. 610, PageID.5743).

### D. The parties agree to vacate Carpenter's sentence pursuant to 28 U.S.C. § 2255

Following Carpenter's February 2022 resentencing, the Supreme Court ruled that defendants, like Carpenter, who had their sentences vacated after the implementation of the First Step Act were subject to the revised penalties. *Hewitt v. United States*, 605 U.S. ___, 145 S Ct 2165 (2025). Considering the decision in *Hewitt*, the Government stipulated to vacate Carpenter's sentence and agreed that he is eligible for relief pursuant to 28 U.S.C. § 2255. (ECF No. 762, PageID.7004).

### III.  Section 3553(a) factors

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a).  *United States v. Rita*, 551 U.S. 338

(2007). While advisory, the Guidelines remain an important factor in fashioning a just sentence. This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

### a.      The nature and circumstances of the offense

Carpenter engaged in a highly organized, dangerous, and wide-ranging crime spree. Exacerbating the crimes is that multiple innocent victims were assailed with firearms during the commission of the offenses. Firearms that Carpenter helped procure—obviously aware for what purposes they would be employed. Carpenter and his cohorts put numerous lives at risk in their pursuit of illegal profit.

### b.      The history and characteristics of the defendant

Carpenter's criminal history is set out in the PSR at ¶¶ 97-109 and includes a variety of adult felony and misdemeanor convictions. Worth noting, it appears that Carpenter violated the terms of his probation on

*every* occasion it was granted. In fact, Carpenter was under sentence at the time of the instant offenses. (PSR ¶ 111).

The PSR describes in some detail his relationship with his family and health, with both reported to be good. (PSR ¶¶ 132, 143). Prior to incarceration, Carpenter maintained a minimal employment history. (PSR ¶ 153).

While incarcerated Carpenter has not been a model prisoner, having been sanctioned multiple times for violating BOP rules and regulations. The most serious of his violations include possession of a dangerous weapon, possession of heroin, and fighting.  As the PSR notes, Carpenter has received 19 misconducts, most recently in April 2025 for fighting. (PSR ¶ 141).

### c. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense

The crimes that Carpenter committed are very serious. He planned a series of violent armed robberies targeting local stores. Worse, because they needed access to locked inventory rooms, his plans required that employees and customers be taken hostage and terrorized. Carpenter was the driving force behind these robberies, planning them, recruiting

his accomplices, acquiring firearms, and arranging transportation, including on at least one occasion stealing a car to be used as the getaway vehicle.

The advisory guidelines create a range so the courts can sentence similar defendants appropriately based upon the severity of their conduct. Here, the parties agree that Carpenter's applicable guideline range is 435 to 468 months' imprisonment (135 to 168 months imprisonment for the robbery convictions plus the mandatory 300 months for the related 924(c) convictions).

### d.    Adequate deterrence and protection of the public

The sentence imposed must be significant enough that it discourages others from committing similar crimes. A guideline sentence would accomplish this goal.

### e.    The need to avoid unwarranted sentence disparities

While the sentencing disparity factor under 18 U.S.C. § 3553(a)(6) involves national disparities, this Court has the discretion to consider co-defendants' sentences when determining an appropriate sentence. *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). The most culpable of Carpenter's co-defendants, who pled guilty, received sentences ranging from

425 to 471 months. Carpenter, who led and organized this serious violent criminal conduct, and did not accept responsibly and went to trial, now faces a guideline range of 435 to 468 months. A sentence of 435 months for Carpenter is just in light of the sentences received by his co-defendants.

## IV.   Conclusion

As detailed above, the crimes committed by Carpenter were very serious. Driven by violence and fueled by greed, Carpenter and his cohorts terrorized law-abiding citizens in their pursuit of easy money.   For his crimes Carpenter deserves to receive a sentence of 435 months' imprisonment.

<div style="margin-left: 50%;">

Respectfully submitted,

JEROME F. GORGON, Jr.
United States Attorney

*s/ Blake S. Hatlem*
Blake Hatlem
Andew R. Picek
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9100
Blake.Hatlem@usdoj.gov

</div>

Dated: May 20, 2026

## Certificate of Service

I certify that on May 20, 2026, I electronically filed the United States Sentencing Memorandum with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following:

Harold Gurewitz,
Attorney for Defendant

s/ *Blake Hatlem*
Assistant U.S. Attorney
United States Attorney's Office

12